UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

| | | |
|---|---|---|
| CITY OF WARREN GENERAL EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) ) | Civil Action No. <br><br> CLASS ACTION <br><br> COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| RAYONIER ADVANCED MATERIALS INC., PAUL G. BOYNTON and FRANK A. RUPERTO, | ) ) ) ) | |
| Defendants. | ) ) ) | |
| ———————————————— | ) | DEMAND FOR JURY TRIAL |

Plaintiff has alleged the following based upon the investigation of plaintiff's counsel, which included a review of U.S. Securities and Exchange Commission ("SEC") filings by Rayonier Advanced Materials Inc. ("Rayonier Advanced Materials" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, media reports about the Company, and documents filed in *Eastman Chemical Co. v. Rayonier Advanced Materials Inc.*, No. 15-ck-40024 (Chancery Ct., Sullivan Ctny. Tenn.).  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a securities class action on behalf of purchasers of the common stock of Rayonier Advanced Materials between October 29, 2014 and August 19, 2015, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the Exchange Act [15 U.S.C. §78aa].

4.      Venue is proper pursuant to §27 of the Exchange Act, as many of the acts and conduct complained of herein occurred in this District and the Company is involved in a dispute with Eastman Chemical Company ("Eastman"), which is based in Tennessee.

5.      In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

**PARTIES**

6.      Plaintiff City of Warren General Employees' Retirement System, as set forth in the accompanying certification, incorporated by reference herein, purchased the common stock of Rayonier Advanced Materials during the Class Period and has been damaged thereby.

7.      Defendant Rayonier Advanced Materials manufactures and sells cellulose specialty products in the United States, China, Japan, Canada, Europe, Latin America, other Asian countries and internationally.

8.      (a)      Defendant Paul G. Boynton ("Boynton") is, and was at all relevant times, the Chairman of the Board and the Company's Chief Executive Officer and President.

(b)      Defendant Frank A. Ruperto ("Ruperto") is, and was at all relevant times, the Company's Chief Financial Officer and Senior Vice President of Finance & Strategy.

(c)      Defendants Boynton and Ruperto are collectively referred to herein as the "Individual Defendants."

9.      Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

10.     The above-referenced officers of Rayonier Advanced Materials, by virtue of their high-level positions with the Company, directly participated in the management of the Company, were directly involved in the day-to-day operations of the Company at the highest levels and were privy to confidential proprietary information concerning the Company and its business, operations,

growth, financial statements, and financial condition, as alleged herein.  Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

11.    As officers and controlling persons of a publicly held company whose shares were, and are, registered with the SEC pursuant to the Exchange Act, and were, and are, traded over the New York Stock Exchange ("NYSE"), and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to promptly disseminate accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of Rayonier Advanced Materials common stock would be based upon truthful and accurate information.  The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

12.    The Individual Defendants participated in the drafting, preparation and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature.  Because of their Board membership and/or executive and managerial positions with Rayonier Advanced Materials, each of the Individual Defendants had access to the adverse undisclosed information about Rayonier Advanced Materials' business prospects, financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the

positive representations made by or about Rayonier Advanced Materials and its business issued or adopted by the Company materially false and misleading.

13.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period.  Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected.  Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

14.     Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Rayonier Advanced Materials common stock by disseminating materially false and misleading statements and/or concealing material adverse facts.  The scheme: (i) deceived the investing public regarding Rayonier Advanced Materials' business, operations, management and the intrinsic value of Rayonier Advanced Materials common stock; and (ii) caused plaintiff and other members of the Class to purchase Rayonier Advanced Materials common stock at artificially inflated prices.

**CLASS ACTION ALLEGATIONS**

15.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all purchasers of the common stock of Rayonier Advanced Materials during the Class Period who were damaged thereby (the "Class"). Excluded from the Class are defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

16.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Rayonier Advanced Materials common stock was actively traded on the NYSE.  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Rayonier Advanced Materials or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

17.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law complained of herein.

18.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation.

19.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)     whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business and operations of Rayonier Advanced Materials;

(c)     whether the price of Rayonier Advanced Materials common stock was artificially inflated during the Class Period; and

(d)      to what extent the members of the Class have sustained damages and the proper measure of damages.

20.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

21.      The Company describes itself as the "leading global supplier of high-purity, cellulose specialties natural polymers for the chemical industry."

22.      The Company manufactures cellulose specialty products that are sold throughout the world to companies for use in various industrial applications and to produce a wide variety of products, including cigarette filters, foods, pharmaceuticals, textiles and electronics. Approximately 56% of sales are to export customers, primarily in Asia and Europe.  The Company has production facilities in Jesup, Georgia and Fernandina Beach, Florida.  The Company's primary products are cellulose specialties and commodity products.

23.      Cellulose specialties are natural polymers, used as raw materials to manufacture a broad range of consumer-oriented products such as cigarette filters, liquid crystal displays, impact-resistant plastics, thickeners for food products, pharmaceuticals, cosmetics, high-tenacity rayon yarn for tires and industrial hoses, food casings, paints and lacquers. Cellulose specialties are primarily used in dissolving chemical applications that require a highly purified form of cellulose. The Company concentrates on producing premium value, technologically demanding forms of cellulose specialty products, such as cellulose acetate and high purity cellulose ethers, and is a leading supplier of these products.

24.    The Company's main commodity products are commodity viscose and absorbent materials.  Commodity viscose is primarily sold to producers of viscose staple fibers, which are used in the manufacture of textiles for clothing and other fabrics and in non-woven applications such as baby wipes, cosmetic and personal wipes, industrial wipes and mattress ticking.  Absorbent materials, typically referred to as fluff fibers, are used as an absorbent medium in products such as disposable baby diapers, feminine hygiene products, incontinence pads, convalescent bed pads, industrial towels and wipes and non-woven fabrics.

25.    In or around 2013, Rayonier Advanced Materials added additional capacity for the manufacture of chemical cellulose, which exceeded the demand of its customers, and, thus, the prices of its products began to decline.

26.    Since 2013, Eastman, the Company's top customer, had been informing Rayonier Advanced Materials of its competitors' pricing and requesting that Rayonier Advanced Materials respond to the declines in market pricing.  By the end of 2014, Rayonier Advanced Materials and Eastman's talks became more contentious over the "meet and release" provision of their agreement, which allows Eastman to obtain "third party offers that meet the requirements of the Supply Agreement for similar cellulose specialties products, and would require [Rayonier Advanced Materials] to either meet such price or release the volume, thereby allowing Eastman to purchase the volume from the third party."

27.    The Company's top three customers are Eastman, Nantong Cellulose Fibers, Co., Ltd., and Daicel Corporation.  The following table illustrates the percentage of sales each customer accounted for:

| Customer | 2016 | 2015 | 2014 | 2013 | 2012 |
|----------|------|------|------|------|------|
| Eastman | 25% | 28% | 31% | 21% | 21% |
| Nantong Cellulose Fibers, Co., Ltd. | 17% | 18% | 18% | 19% | 17% |
| Daicel Corporation | 14% | 13% | 15% | 13% | 14% |

28.     As shown above, Eastman's percentage of sales began to decline after the 2014 fiscal year – at the time of their dispute – while the percentage of sales to the Company's other two main customers remained relatively the same from 2012 to 2016.  Thus, the dispute had a significant impact on Rayonier Advanced Materials' sales and was material to shareholders.

29.     The Class Period commences on October 29, 2014.  On that date, Rayonier Advanced Materials issued a press release announcing its financial results for the third quarter of 2014, the period ending September 30, 2014.  For the quarter, the Company reported net income of $19 million, or $0.46 per share, and sales of $254 million.  The Company's cellulose specialties sales were higher than the previous year, despite "lower prices" on the products.  Defendant Boynton, commenting on the results, stated, in pertinent part, as follows:

> "We are pleased with third quarter results, our first on a stand-alone basis.  We achieved pro forma EBITDA margin of approximately 27 percent and remain on-track to meet our previously announced guidance for 2014.  Additionally, we successfully extended an existing contract with a significant long-term customer and look forward to growing with them in the future."

30.     With regard to the Company's outlook, defendant Boynton stated, in pertinent part, as follows:

> "As we finish the year, we continue to focus on operational excellence and producing the highest quality cellulose specialties.  We recognize the current market dynamics and have embarked on initiatives to preserve and enhance profitability, protect and expand cellulose specialties sales, and grow outside our existing business.  We are confident these initiatives will drive our profitability and shareholder value."

31.     On October 29, 2014, the Company held a conference call with analysts and investors.  With regard to the cellulose specialties market, defendant Boynton stated, in pertinent part:

> With nearly 0.5 million tons of current production, we are proud to be the global leader in cellulose specialties.  We maintain our position because of the quality and consistency of our products, surety of supply, superior technical support, low manufacturing costs and financial strength.

However, being the leader does not insulate us from the realities of the current challenges in the market and, most significantly, oversupply. As we have previously discussed and highlighted on page 7, this situation is being driven by several factors. First, is the expansion of capacity by current participants including our own expansion. Second, week pricing in the commodity viscose market. As viscose prices drop, existing cellulose specialty players who also produce commodity viscose are enticed to shift some of their commodity production into more specialties. Third, the slower demand growth in certain end markets including cigarettes.

Now in response to these market dynamics we are focusing on the following action items as referred to on page 8. First is preserving and enhancing our profitability. We will do this with a relentless focus on running our facilities efficiently and reliably. Reliable operations are low-cost operations. We will also implement broad cost reduction initiatives. We are evaluating our corporate structure and expenses, operational and staffing costs, reliability enhancements to mitigate waste, and capital investment for return projects.

As a small example of the latter, you may have recently read that we entered into a cogeneration power and steam agreement with Chesapeake Utilities Corporation. They will build a confined heat and power plant on our site in Fernandina Beach, Florida. Upon estimated completion of this project in 2016, we expect to realize up to $2 million in annual energy cost savings.

Additionally, in the near per term we will redirect a significant portion of our cellulose specialties expansion capacity to the commodity markets by entering into multiyear contracts for these commodities. This will limit our cellulose specialties capacity for a period of time and provide us with a price premium on our commodity sales.

Second, we will focus on protecting and growing our existing cellulose specialties business by partnering with our customers on innovations to improve the efficiency of their operations and the quality of their products, thereby further enhancing our value proposition to them. As one example, we're working with a key customer on a project aimed at significantly increasing their manufacturing productivity with an ultra-high purity product we're developing for them.

We are also working to actively extend contracts with existing customers as those opportunities present themselves. For example, as we recently reported in an 8-K filing, we have extended a contract with a significant long-term customer. We are pleased to add another year onto an already multiyear contract.

We are also identifying opportunities to place additional cellulose specialty volumes into market segments we believe we're underrepresented. Currently, we have more than a dozen ongoing qualification trials in either ethers or cellulose specialty applications.

Third and finally, we plan to grow the Company by identifying specific opportunities that align with our core competencies. These opportunities include

- 9 -

partnerships that leverage our manufacturing operations, co-product streams and R&D capabilities.  Further, we are working with our Board and outside resources to evaluate specific areas for acquisition growth in attractive markets that provide a pathway to leadership.  We expect this analysis to be completed in the first quarter of 2015.

To sum it up, we understand the realities of the current market and we have dealt with similar dynamics before.  We have always responded to such challenges and emerged as a stronger, more profitable entity, and we're actively putting ourselves on that path now.

32.     In response to a question concerning pricing and contracts, defendant Boynton stated, in pertinent part, as follows:

Chip Dillon – Vertical Research Partners – Analyst

Okay. That's helpful. I know in the past years, you guys have tended to give us guidance on the forward look on cellular specialties prices.  I think it's mostly hedged, been – in the fourth quarter call in late January, early February.  Last year you gave us a look in December.

I didn't know, based on how you sensed the negotiations are going this year, when you think you will be in a position to give us an estimate?  Maybe even, at this time – not by contract, of course, but just on an overall average basis, where you see the cellulose specialty prices ending up on average for next year versus this year?

[Boynton:]     Chip, we almost always give that guidance in our fourth-quarter call in January.  Last year was the only exception, we moved that up to December.  Otherwise we did that in the January timeframe.  ***Our discussions are good, they're healthy, they're ongoing***.  I really have no more flavor to add to it at this point.[1]

33.     On January 28, 2015, Rayonier Advanced Materials issued a press release announcing its financial results for the 2014 fourth quarter and year-end, the period ending December 31, 2014.  For the quarter, the Company reported a net loss of $23 million, or $(0.55) per share, and sales of $248 million.  The Company's cellulose specialties sales declined due to "lower cellulose specialties sales prices."  Defendant Boynton, commenting on the results, stated, in pertinent part, as follows:

"As expected, market conditions remained challenging in the fourth quarter of 2014. . . .  Throughout the year, cellulose specialties markets were oversupplied and global demand decelerated.  To offset some of the impact from the resulting

---

[1]     All emphasis is added unless otherwise indicated.

lower prices, we focused our efforts on reducing costs and improving our operating efficiencies.  Consequently, in spite of experiencing higher than anticipated costs in the second half of the year, we were able to achieve the full year guidance provided in July."

34.     With regard to the Company's outlook for 2015, defendants stated, in pertinent part,

as follows:

The Company expects the 2015 cellulose specialties market to face a combination of industry oversupply and weaker end-market demand.  The Company's cellulose specialties volumes in 2015 are forecasted to be comparable to the last couple years with prices 7 to 8 percent below 2014.  Despite the difficult environment and aggressive pricing offered by competitors, the Company maintained its volume and increased its share of customers' requirements.  This success is largely due to the Company's differentiated, high-quality product and long-term customer relationships.  The Company expects to generate pro forma EBITDA between $200 million and $220 million in 2015.

"We are actively responding to unfavorable market conditions by implementing actions that will lower our cost position, enhance cash flows and improve overall competitiveness," said Boynton.  "These actions include $40 million in cost savings initiatives, a $15 million improvement to working capital, accelerating continuous improvement initiatives and leveraging manufacturing productivity programs.  In addition, we will focus on maintaining ample financial flexibility to capitalize on internal growth and productivity opportunities."

"We have set forth aggressive initiatives and have put in place a management team with the energy and expertise required to achieve the necessary results.  And when the markets do improve, we will not only be the leader, but the clear winner, in the cellulose specialties arena," said Boynton.

35.     On January 28, 2015, the Company held a conference call with analysts and investors.

With regard to the cellulose market, defendant Boynton stated, in pertinent part, as follows:

In cellulose specialties, we believe there's modest growth in filtration, pacings and tire cord and mixed demand in ethers with some ether subsegments fairly robust, and others like micro crystalline cellulose temporarily soft.  Acetate, as we mentioned on the last call, will resume growth at an underlying consumer demand we believe of 0% to 1%.  But it is likely to be overwhelmed by inventory destocking of both acetate pulp and tow in 2015.

Combining customer feedback, we believe that required destocking adjustment in 2015 could total 30,000 to 50,000 tons.  As such, rather than seeing industry forecasted growth of approximately 45,000 tons or 2.9%, we believe cellulose specialty's purchases in 2015 have the potential to contract compared to 2014 before resuming real demand growth in subsequent years.

These dynamics, coupled with currency movements, have driven aggressive pricing tactics by our competitors and negatively impacted our 2015 pricing. Although we have volume-based contracts, we can't dictate pricing and expect to remain strong partners with our customers.  Hence, as noted, we expect pricing on average to be down 7% to 8% from 2014.

*Now, despite this, I am pleased to report that Rayonier Advanced Materials in 2015 will be able to maintain or increase our share of volume at each of our top 10 customers*.  These customers represent more than 75% of our revenues.

Additionally, we're excited that we are able to convert several customer trial efforts in 2014 into ongoing business in 2015 in both ethers and high strength viscose segments.  This is testament to the strength of our business, the quality of our distinctive products and services, and our strong customer relationships.

36.     On May 1, 2015, defendants issued a press release announcing Rayonier Advanced Materials' financial results for the first quarter of 2015, the period ending March 31, 2015.  For the quarter, the Company reported net income of $11 million, or $0.25 per share, and sales of $221 million.  With regard to the decline in cellulose specialties sales, defendants stated, in pertinent part, as follows:

Sales for the first quarter of 2015 were $221 million compared to $243 million in the prior year period.  The $22 million decline was primarily due to lower cellulose specialties sales prices and volumes.  Cellulose specialties sales volumes declined in early 2015 due to timing of customer orders mainly related to acetate tow destocking as previously communicated.  Full year volumes are on track to be comparable to 2014/2013 levels, with the vast majority of these volumes under contract.

37.     Defendant Boynton, commenting on the results, stated, in pertinent part, as follows:

"Our first quarter results were in line with our expectations.  We generated solid cash flow and were able to reduce net debt by $32 million. . . .  We continue to focus on our 2015 initiatives to reduce costs and working capital, optimize our assets and grow our business."

38.     With regard to the Company's outlook, defendant Boynton stated, in pertinent part, as follows:

"Although cellulose specialties volumes were lower in the first quarter as expected, we are off to a good start in 2015 driven by our cost reduction and continuous improvement initiatives.  Based on our performance to date, we believe we will realize our goal of run-rate savings approaching $40 million and capture a significant portion of these savings in 2015.  This progress, coupled with favorable

input costs, specifically for certain chemicals and energy, allows us to raise our EBITDA guidance for 2015 to $210 to $225 million."

39.     In reaction to these announcements, the price of Rayonier Advanced Materials common stock rose $2.41 per share, or 14%, to close at $19.12 per share, on heavy trading volume.

40.     On July 30, 2015, defendants issued a press release announcing Rayonier Advanced Materials financial results for the second quarter of 2015, the period ending June 27, 2015.  For the quarter, the Company reported a net loss of $0.3 million, or $(0.01) per share, and sales of $221 million.  With regard to its cellulose specialties sales, defendants stated, in pertinent part, as follows:

As expected, cellulose specialties prices were down 8 percent from the prior year periods reflecting the results of the 2015 price negotiations.  Cellulose specialties sales volumes for the three and six months ended 2015 were slightly lower than prior year periods, while commodity product sales volumes increased significantly reflecting improved production efficiencies and more operating days in 2015.

41.     Defendant Boynton, commenting on the results, stated, in pertinent part, as follows:

"Our second quarter results were in line with expectations.  Based on our performance to date and the progress we have made on our cost-savings initiatives, we are confident we will achieve results in the upper half of our full year pro forma EBITDA guidance."

42.     With regard to the Company's outlook, defendant Boynton stated, in pertinent part, as follows:

"We continue to focus on our 2015 initiatives to reduce costs, optimize our assets and grow our business. . . .  To that end, this morning we announced a strategic repositioning to better align our assets to current market conditions.  Additionally, earlier in the quarter, we entered into a non-binding letter of intent to form a joint venture with Borregaard ASA that would process lignin produced at our Fernandina plant, currently used for energy, into higher-value products.  These actions, combined with our cost-savings initiatives, will further our ability to compete effectively and position ourselves for near and long-term success."

43.     On July 30, 2015, the Company issued a second press release announcing a strategic repositioning where it would reduce its cellulose specialties capacity by 28% and increase its fluff fiber capacity by 11%.  Moreover, the Company announced that it was taking a one-time, non-cash

write-off of $28 million related to abandoned assets.  Defendant Boynton, commenting on the

strategic repositioning, stated, in pertinent part, as follows:

> "In light of our asset optimization initiatives that balance our capacity with our existing sales volume, we are de-emphasizing cellulose specialties volume growth. . . .  As a result, we will be focused on exceeding the expectations of our cellulose specialties customers, making long-term commitments to our fluff customers, driving growth through innovation and improving profitability across our asset base."

> "Today's announcement will not alter our ability to provide our customers with the high-quality products, superior technical support, and security of supply that are critical to their operations."

44.     On July 30, 2015, the Company held a conference call with analysts and investors.

With regard to the cellulose specialties market, defendant Boynton stated, in pertinent part:

> We believe that the growth in the cellulose specialties end markets will be lower than previously anticipated.  In acetate, we believe that demand will be soft in the near-term, driven by continued inventory de-stocking and recent public policy changes in China.  In the ethers markets, while there are pockets of good growth, the broader category has been pressured by both a softer European economy and depressed pricing for cotton-based alternatives.

> Markets for high-strength viscose, engine filtration media, and casings remain relatively stable and we expect these trends to continue.  On the supply side, cellulose specialties capacity has increased as a result of our 2013 expansion, the expansion of others, and improvement in product quality from certain competitors. The combination of slow demand growth and increased available supply has created a supply/demand imbalance and negatively impacted our cellulose specialty prices, declining by 14% over the last two years.

> As you recall, the CSE project was initiated in the 2010/2011 timeframe when the market had been sold out for several years and the goal was to provide security of supply and stability to an expanding cellulose specialties market and support our customer-stated growth expectations at that time.  We did not perceive the subsequent increase in supply nor the slowdown in the broader cellulose specialty end markets. In light of these dynamics, we are reducing our capacity, improving our cost position, and shifting our strategy to deemphasize volume growth in cellulose specialties.

45.     In response to a question about pricing and competition, defendant Boynton stated, in

pertinent part, as follows:

Steven Chercover – D.A. Davidson & Co. – Analyst

When you speak to your clients, one of the reasons why you were able to grow evidently or apparently why you expanded so much is that – was this perception that you were the premium product.  Have people been telling you now that the other guys' product is fungible with yours?

[Boynton:]     We think our price is appropriate and in line with the value we supply in the market.  Last year, as you know, we had a contract that was up.  We had that same customer renew with us, as we previously reported. I think it gives us good testament that our value equation is good out there in the marketplace.  We think there's been a quality rise with some of our competition, there's no question about that.  But we also offer a lot of additional value, we think, in terms of quality, consistency, in terms of just actual redundancy in our product, the fact that we have three now lines that can produce an acetate product.

The value equation has a lot of components into it and one of them is price.  But certainly, we've seen some improvement in quality of our competition, but we think we still have a very high-quality product in the market.

46.     The statements referenced above in ¶¶29-38 and 40-45 were each materially false and misleading when made because they misrepresented or failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them:

(a)     since 2013, Eastman had been informing Rayonier Advanced Materials of its competitors' pricing and requesting that Rayonier Advanced Materials respond to declines in market pricing;

(b)     Rayonier Advanced Materials and Eastman have been in a protracted dispute over the "meet and release" provision of their agreement; and

(c)     as a result of the foregoing, defendants lacked a reasonable basis for their positive statements about the Company's financial performance and outlook during the Class Period.

47.     Then, on August 18, 2015, after the markets closed, the Company filed a form 8-K with the SEC.  The 8-K informed investors that the Company had filed an action against Eastman regarding its "chemical cellulose specialty products contract with Eastman."  The 8-K stated, in pertinent part, as follows:

The Company's filing asks the court to confirm the meaning of certain "meet or release" pricing and volume provisions in the agreement that require the Company, under certain circumstances, to respond to offers made to Eastman by other suppliers. The Company seeks a declaration that these provisions apply to a maximum of 7,500 metric tons of product per year. In addition, the Company has asked the court to confirm the meaning of certain contract provisions relating to pricing in future contract years.

On the evening of August 12, the Company learned that Eastman had filed a similar declaratory judgment action on August 4 in the Chancery Court for Sullivan County, Tennessee, concerning the same contract "meet or release" provisions. Eastman's filing seeks a declaration that all of its contracted volume is subject to the meet or release provision or, in the absence of such interpretation, that the contract is invalid. The Company was served with that action on August 13, 2015.

48.     On August 19, 2015, the Company issued a press release, which further explained the dispute with Eastman. Specifically, the language in the contract at issue involved the "meet or release" provisions of the agreement, which allow Eastman to obtain "third party offers that meet the requirements of the Supply Agreement for similar cellulose specialties products, and would require [Rayonier Advanced Materials] to either meet such price or release the volume, thereby allowing Eastman to purchase the volume from the third party."

49.     In reaction to these announcements, the price of Rayonier Advanced Materials common stock fell $6.01 per share, or 44%, to close at $7.62 per share, on extremely heavy trading volume.

50.     The market for Rayonier Advanced Materials common stock was open, well developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Rayonier Advanced Materials common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased Rayonier Advanced Materials common stock relying upon the integrity of the market price of Rayonier Advanced Materials common stock and market information relating to Rayonier Advanced Materials, and have been damaged thereby.

51.     During the Class Period, defendants materially misled the investing public, thereby inflating the price of Rayonier Advanced Materials common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

52.     At all relevant times, the material misrepresentations and omissions particularized in this complaint directly or proximately caused, or were a substantial contributing cause of, the damages sustained by plaintiff and other members of the Class.  As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Rayonier Advanced Materials' business, products and operations.  These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Rayonier Advanced Materials and its business, products and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

## ADDITIONAL SCIENTER ALLEGATIONS

53.     As alleged herein, defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting

the true facts regarding Rayonier Advanced Materials, their control over, and/or receipt and/or modification of Rayonier Advanced Materials' allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Rayonier Advanced Materials, participated in the fraudulent scheme alleged herein.

## LOSS CAUSATION

54.     During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Rayonier Advanced Materials common stock and operated as a fraud or deceit on Class Period purchasers of Rayonier Advanced Materials common stock by failing to disclose and misrepresenting the adverse facts detailed herein. As defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of Rayonier Advanced Materials common stock declined significantly as the prior artificial inflation came out of the Company's common stock price.

55.     As a result of their purchases of Rayonier Advanced Materials common stock during the Class Period, plaintiff and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws. Defendants' false and misleading statements had the intended effect and caused Rayonier Advanced Materials common stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $30.33 per share on October 28, 2014.

56.     By concealing from investors the adverse facts detailed herein, defendants presented a misleading picture of Rayonier Advanced Materials' business, products and operations. When the truth about the Company was revealed to the market, the price of Rayonier Advanced Materials common stock fell significantly. This decline removed the inflation from the price of Rayonier Advanced Materials common stock, causing real economic loss to investors who had purchased Rayonier Advanced Materials common stock during the Class Period.

57.     The declines in the price of Rayonier Advanced Materials common stock after the corrective disclosures came to light were a direct result of the nature and extent of defendants' fraudulent misrepresentations being revealed to investors and the market.  The timing and magnitude of the price declines in Rayonier Advanced Materials common stock negates any inference that the loss suffered by plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to defendants' fraudulent conduct.

58.     The economic loss, *i.e.*, damages, suffered by plaintiff and the other Class members was a direct result of defendants' fraudulent scheme to artificially inflate the price of Rayonier Advanced Materials common stock and the subsequent significant decline in the value of Rayonier Advanced Materials common stock when defendants' prior misrepresentations and other fraudulent conduct were revealed.

### APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

59.     At all relevant times, the market for Rayonier Advanced Materials common stock was an efficient market for the following reasons, among others:

(a)     Rayonier Advanced Materials common stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient, electronic stock market;

(b)     as a regulated issuer, Rayonier Advanced Materials filed periodic public reports with the SEC and the NYSE;

(c)     Rayonier Advanced Materials regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Rayonier Advanced Materials was followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

60.     As a result of the foregoing, the market for Rayonier Advanced Materials common stock promptly digested current information regarding Rayonier Advanced Materials from all publicly available sources and reflected such information in the price of its common stock.  Under these circumstances, all purchasers of Rayonier Advanced Materials common stock during the Class Period suffered similar injury through their purchase of Rayonier Advanced Materials common stock at artificially inflated prices and a presumption of reliance applies.

## COUNT I

### Violation of §10(b) of the Exchange Act
### and Rule 10b-5 Promulgated Thereunder
### Against All Defendants

61.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

62.     During the Class Period, defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

63.     Defendants: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements made not misleading; and (c) engaged in acts, practices and a course of business that operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

64.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Rayonier Advanced Materials common stock. Plaintiff and the Class would not have purchased Rayonier Advanced Materials common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

65.     As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of Rayonier Advanced Materials common stock during the Class Period.

## COUNT II

### Violation of §20(a) of the Exchange Act
### Against All Defendants

66.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

67.     The Individual Defendants acted as controlling persons of Rayonier Advanced Materials within the meaning of §20(a) of the Exchange Act as alleged herein.  By reason of their positions as officers and/or directors of Rayonier Advanced Materials, and their ownership of Rayonier Advanced Materials stock, the Individual Defendants had the power and authority to cause Rayonier Advanced Materials to engage in the wrongful conduct complained of herein.  Rayonier Advanced Materials controlled the Individual Defendants and all of its employees.

68.     By reason of such conduct, defendants are liable pursuant to §20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.      Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.      Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED:  August 17, 2017                    ROBBINS GELLER RUDMAN
                                           & DOWD LLP
                                           CHRISTOPHER M. WOOD, #032977


                                           _s/ Christopher M. Wood_
                                           CHRISTOPHER M. WOOD

                                           414 Union Street, Suite 900
                                           Nashville, TN  37219
                                           Telephone:  800/449-4900
                                           615/252-3798 (fax)
                                           cwood@rgrdlaw.com

                                           ROBBINS GELLER RUDMAN
                                           & DOWD LLP
                                           SAMUEL H. RUDMAN
                                           MARIO ALBA JR.
                                           58 South Service Road, Suite 200
                                           Melville, NY  11747
                                           Telephone:  631/367-7100
                                           631/367-1173 (fax)
                                           srudman@rgrdlaw.com
                                           malba@rgrdlaw.com

VANOVERBEKE, MICHAUD &
   TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)

Attorneys for Plaintiff

I:\Admin\CptDraft\Securities\Cpt Rayonier Advanced Materials.docx

CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

CITY OF WARREN GENERAL EMPLOYEES' RETIREMENT SYSTEM ("Plaintiff") declares:

1.      Plaintiff has reviewed a complaint and authorized its filing.

2.      Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| Security | Transaction | Date | Price Per Share |
|----------|-------------|------|-----------------|

*See* attached Schedule A.

5.      Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:

6.      The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages)

directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _14th_ day of August, 2017.

CITY OF WARREN GENERAL
EMPLOYEES' RETIREMENT SYSTEM

By: _Christine C. Cassani_

Its: _Chairperson/Trustee_

- 2 -

RAYONIER

**SCHEDULE A**

**SECURITIES TRANSACTIONS**

**Acquisitions**

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 11/28/2014 | 4,580 | $24.56 |
| 12/30/2014 | 4,290 | $22.55 |

**Sales**

| Date Sold | Type/Amount of Securities Sold | Price |
|---|---|---|
| 08/19/2015 | 13,020 | $7.37 |

*Opening position of 4,150 shares.